# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> 520.32 ACRES, MORE OR LESS, IN ) <br> WASHINGTON AND GREENE COUNTIES, ) <br> LOCTED ON PARCEL IDENTIFICATION ) <br> NO. 020-009-00-00-0019-00, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 2:14-cv-00206 <br><br> Judge Mark R. Hornak |

## **OPINION**

**Mark R. Hornak, United States District Judge**

The saga surrounding some property in Washington and Greene counties belonging to Steven D. Smith, Beryl Smith, Steven Garth Smith, and Lisa Anne Smith ("the Smiths") was thought to have concluded on January 9, 2015. On that day, at a pretrial conference before this Court, all parties to this suit stood up and told the Court that all hatchets had been buried and the matter was settled. In no uncertain terms, everyone agreed that every last wrinkle over rights, remedies, and recompense had been ironed out. Their statements were unequivocal; their demeanors resolute. All that was left was the word processing and signatures.

But alas, it wasn't so.

Or at least that's what the Smiths say. They have refused to sign the confirmatory writings generated after the January 9, 2015 pretrial conference. Columbia Gas then filed a Motion to Enforce Settlement Agreement that is now before the Court. ECF No. 166. The Motion was exhaustively briefed, responded and replied to, with supplements added for good measure. ECF Nos. 173; 174; 181; 184; 187; 207; 208; 215; 216; 219; 220. On October 8, 2015,

the Court held a lengthy hearing with testimony from the parties and the Smiths' former lawyers alike. *See* ECF No. 209.

With the evidence so proffered, and the record so adduced, the Court will make findings of fact and conclusions of law. The Court will then put those puzzle pieces together, with the result being that there was indeed an agreement to settle the case on January 9, 2015. As such, Columbia Gas' Motion to Enforce Settlement Agreement will be granted.

I.  **FINDINGS OF FACT**

The Court makes the following findings of fact:[1]

1. On January 9, 2015, the parties appeared before this Court for a final pre-trial conference. During a recess in that proceeding, the parties engaged in settlement negotiations. The Smiths were represented by their retained counsel Harlan Stone and William P. Bresnahan, II of Dickie, McCamey & Chilcote, P.C. Messrs. Stone and Bresnahan later withdrew from the representation. Oct. 8, 2015 Hr'g Tr. 4:15–25. Columbia Gas was represented by Richard Holzheimer and Ana Cordova. *Id.* 2:8–12.

2. During the settlement negotiations, lawyers for both sides discussed, reviewed, and put handwritten changes on Right-of-Way Agreements and Licenses for Temporary Construction Activity generated by Columbia Gas. *Id.* 23:25–2:10, 69:14–19, 97:4–17. The issue of money was agreed to and negotiations focused on language in the settlement documents. *Id.* 23:11–20.

---

[1] The Court makes these findings of fact based upon the testimony and records adduced at the January 9, 2015 and October 8, 2015 hearings, along with consideration of the proposed findings of fact and conclusions of law submitted by the parties. *See* ECF Nos. 215, 216. The portions of those filings that are argumentative or contrary to the record are not adopted here. The Court would also note that resolution of this case does not require the Court to find any testifying witness unbelievable. All were credible. As seen below, it is the legal consequence of what happened that is at the center of things.

3. The Smiths waited in a Court conference room while their lawyers negotiated with Columbia Gas' lawyers. *Id.* 68:8–25.

4. After settlement language was agreed upon by all of the lawyers, Columbia Gas' counsel handwrote the additional language (including that referencing future use of the pipelines, herbicides, and FERC authorization) on a printed Columbia Gas right-of-way agreement, which was then delivered to counsel for the Smiths. *Id.* 24:19–25:25. The Smiths' lawyers then took the revised documents to where the Smiths were waiting, and met with them to discuss the possible agreement between them and Columbia Gas. *Id.* 71:3–21, 89:8–90:2, 98:13–99:2.

5. Upon consulting with their clients, the Smiths' counsel emerged to tell Columbia Gas' counsel that a deal had been struck. *Id.* 25:13–17. The Smiths' counsel did not seek any additional revisions nor did they seek to revisit any negotiations. *Id.* 26:9–12.

6. Mr. Stone testified[2] that he had a draft agreement with his own handwritten notes on it during the negotiation and when he discussed the terms of the agreement with the Smiths. Mr. Stone also testified that his handwritten notes were not the ones reflected in the document that Columbia Gas seeks to enforce here, rather it was the handwritten notes taken by Columbia Gas' counsel that were memorialized later. *Id.* 87:25–88:24. Notably, there was no testimony offered that there was any variance between Stone's notes and those of Columbia Gas' counsel on their respective "mark up" copies of the right-of-way agreements.

---

[2] At the October 8, 2015 hearing, all of the Smiths expressly waived the attorney-client privilege to permit the testimony of Messrs. Stone and Bresnahan. Oct. 8 Hr'g Tr. 64:6–9.

7. Mr. Stone testified that on January 9, 2015 he had "gone through" the material terms of the settlement with the Smiths and that the amount of money and material language[3] had been agreed to "subject to memorialization in the type of settlement agreement Mr. Holzheimer has stated on the record." Oct. 8, 2015 Hr'g Tr. 11:4–12:25. This referred to Mr. Holzheimer's testimony at the enforcement hearing on October 8, 2015.

8. Mr. Holzheimer testified that the changes in the Proposed Agreement were transcribed verbatim from a draft copy containing handwritten notes created by Columbia Gas' counsel during the January 9, 2015 negotiations. *Id.* 39:2–18.

9. At the October 8, 2015 hearing, Mr. Holzheimer summarized the negotiating process thusly:

> "We negotiated the language, our clients signed off on the language, signed off on the whole Pennsylvania Right-of-Way Agreement. We gave the document with the handwritten changes to the [Smiths'] attorneys, so they had that document. They came back and said it was agreed to. It was done. The only thing left was to take the handwritten changes, put it into a final typewritten document so it wouldn't be handwritten changes and Ms. Cordova did that and sent it to them." *Id.* 27:1–9.

10. When the final document—with the handwritten, negotiated language incorporated into a typed document—was forwarded to the Smiths' counsel by Columbia Gas' counsel, the Smiths' counsel did not object to anything in the document. *Id.* 27:24–28:7. As counsel for both sides agree, that document reflected the language of the terms negotiated and agreed to on January 9, 2015. *Id.* 31:1–3; 77:21–77:20; 87:14–15. The Smiths, however, refused to sign it. *Id.* 31:9–10.

11. On January 9, 2015, the Smiths did not physically review any documents with handwriting on them. Instead, their counsel told them that Columbia Gas was "willing

---

[3] The Smiths do not dispute agreements as to other language, such as confidentiality provisions. ECF No. 215, at 11 ¶ 21.

4

to accept your terms." Oct. 8, 2015 Hr'g Tr. 143:14–23, 144:18–23. Nobody ever told the Smiths that Columbia Gas had accepted the version of the settlement documents which the Smiths had previously generated on their own and then signed, and which they preferred. *Id.* 150:7–8. All along, Plaintiffs' counsel and Columbia Gas' counsel were aware of several somewhat unique concerns of the Smiths and the Smiths' desire to use "their" documents. *Id.* 66:7–12.

12. Mr. Steven D. Smith never asked either of his counsel what they meant by "accept your terms." *Id.* 150:17. There was no testimony indicating that any other Smith asked such a clarifying question either.

13. Counsel for both sides as well as the Smiths themselves then returned to the courtroom and told the Court that a settlement was agreed to. Jan. 9, 2015 Hr'g Tr. 10:24–19:18.

14. The Court asked Mr. Stone, in the presence of and on behalf of all his clients, whether the "material terms, both as to amount and material language, have in all respects been fully agreed to." Mr. Stone answered affirmatively. *Id.* 12:1–9.

15. Mr. Stone believed there was an agreement after the extensive negotiations because Columbia Gas' counsel had given him a clear understanding of what they were and were not willing to do with respect to settlement language. *Id.* 68:8–25. Mr. Stone likewise had a clear idea of the Smiths' "wish list," *i.e.* things that they wanted in a settlement agreement. *Id.* 70:12–20. So when he and Mr. Bresnahan negotiated additional language to be added to Columbia Gas' standard right-of-way agreement, and subsequently discussed that language with the Smiths, that was a compromise to which everyone on both sides agreed because it included language to address topics

5

the Smiths wanted confirmed and because Columbia Gas refused to sign the Smiths' version of any right-of-way agreement. *Id.* 70:12–70:21; 80:2–11; 83:6–16. In effect, according to the Smiths' lawyers, it was the best possible deal on language that could be negotiated. *Id.* 92:5–10. It represented a "give" by each side.

16. At the January 9, 2015 hearing, the following exchanges took place between the Court and Messrs. Steven D. Smith and Steven Garth Smith (who each told the Court that they spoke on their own behalf and also for their spouses):

THE COURT: And have you discussed with [counsel] the terms of the settlement relative to the property interests of yours and your wife that are involved in this case?

MR. STEVEN D. SMITH: I have.

THE COURT: <u>And do you understand and agree that all of the matters involved in this litigation regarding that have been settled between you and Columbia Gas?</u>

MR. STEVEN D. SMITH: <u>Yes.</u>

THE COURT: That's as to money and as to the language regarding those property interests?

MR. STEVEN D. SMITH: Yes.

THE COURT: And you understand that it will all be confirmed in writing in a settlement agreement?

MR. STEVEN D. SMITH: Yes.

THE COURT: You're satisfied with the job that Mr. Stone and Mr. Bresnahan have done for you?

MR. STEVEN D. SMITH: Very much so.

*Id.* 15:16–25, 16:1–10 (emphasis added).

THE COURT: Your lawyers are Mr. Bresnahan and Mr. Stone; is that correct?

MR. STEVEN GARTH SMITH: Correct.

THE COURT: You satisfied with the job they have done for you?

6

MR. STEVEN GARTH SMITH: Yes, very much.

THE COURT: And have you discussed with them the terms, both monetary and language, regarding a full and final settlement of all of the claims involving your property that are involved in this case?

MR. STEVEN GARTH SMITH: Yes, I have, Your Honor.

THE COURT: <u>And do you agree to the settlement on all of those terms?</u>

MR. STEVEN GARTH SMITH: <u>Yes.</u>

THE COURT: You understand that will be confirmed in writing in a settlement agreement.

MR. STEVEN GARTH SMITH: Yes, Your Honor.

*Id.* 16:19–17:10 (emphasis added).

17. After the January 9, 2015 hearing, and based on the settlement discussions from that day, counsel for Columbia Gas made changes to the electronic versions of its Right-of-Way Agreements and Licenses. On February 16, 2015, Columbia Gas forwarded those documents to counsel for the Smiths. Oct. 8, 2015 Hr'g Tr. 27:24–28:3.

18. The changes made to the "standard" Columbia Gas form of these documents included (1) inserting the words "as authorized by FERC" in paragraph one under the "Grant" section; (2) inserting the words "without the use of herbicides except as approved by the Commonwealth of Pennsylvania" in paragraph five under the "Grant" section; (3) inserting the words "and as approved by FERC" in the second paragraph of the "Permanent Right-of-Way Area" section; and (4) inserting the words "as authorized by FERC" under the "Secondary Grant" section. Oct. 8 Hr'g Def. Ex. 5 (magenta highlighting); Oct. 8, 2015 Hr'g Tr. 44:12–46:14. These were all additions sought by counsel for the Smiths in order to directly and specifically address concerns raised by the Smiths.

7

19. Specifically, the Smiths did not want to grant Columbia Gas any rights to their land greater than what Columbia was authorized to take pursuant to the FERC Order Issuing Certificate for the relocation and enlarging of Line 1570. *Id.* 70:12–20, 142:10–143:4, 149:3–150:1.

20. Mr. Bresnahan testified that he believes that the Smith's interests, including as set forth in paragraph 19 above, are fully protected regardless of any agreement they may enter into with Columbia Gas, with or without any language such as "as authorized by FERC" because in his opinion Columbia Gas' rights are limited by the language of the FERC Order irrespective of the private right-of-way agreement. *Id.* 124:17–126:1, 128:3–129:7. Essentially, he believed that the "magenta language"[4] was "belt and suspenders." *Id.* 125:11–15. Mr. Bresnahan explained to the Smiths on January 9, 2015 that the negotiated language "took care of some of the concerns that they had" but that Columbia Gas would not agree to sign the Smiths' version of the documents. *Id.* 99:3–7; 83:6–16; 129:5–7; 163:5–15. He also told the Smiths that "as a result of this protection, they were going to get everything that they wanted." *Id.* 115:11–18; *see also id.* 116:14–24. The Smiths then expressed to their lawyers that "[t]hey were confident . . . that although they didn't get everything they wanted, the major concerns that they had were taken care of." *Id.* 122:4–11.

21. For its part, Columbia Gas has declined to state to the Court whether it did or did not agree with Mr. Bresnahan's opinion that the Smiths' interests were protected by the "magenta language" as described by Mr. Bresnahan. *Id.* 117:3–118:8. However, Mr.

---

[4] Referring to Defendant's Hearing Exhibit 5 at page 65—the negotiated language that was added by Columbia Gas to the working copies of the Right-of-Way Agreements and Licenses for Temporary Construction Activity. At the hearing on October 8, 2015 that language was highlighted in magenta.

Bresnahan testified without contradiction that Columbia Gas had previously conceded to him during the negotiations that the language did indeed so protect the Smiths' interests. *Id.* 109:12–19; 112:6–23.[5]

II. **CONCLUSIONS OF LAW**

The Court makes the following conclusions of law:

1. Because the issues here relate to contract formation and interpretation, Pennsylvania law applies to the Motion to Enforce Settlement. *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2000) (citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) ("The validity and enforceability of settlement agreements is governed by state contract law.")). After all, "[s]ettlement agreements are contracts." *Maloney v. Valley Med. Facilities*, 984 A.2d 478, 489 (Pa. 2009) (quoting Restatement (Third) of Torts: Apportionment of Liability § 24 cmt. f (Am. Law Inst. 2016)); *see also Robinson v. Penske Truck Leasing Co., LP*, No. 495 EDA 2012, 2013 WL 4400108, at *3 (Pa. Super. Ct. May 10, 2013) ("[s]ettlement agreements are contracts.").

2. Under Pennsylvania law the "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986).

---

[5] Basically, all lawyers on both sides agreed to insert the "magenta" language, although that exact language was not necessarily reflected word-for-word in the handwritten notes made by Mr. Stone. *See* Oct. 8, 2015 Hr'g Tr. 87:25–88:24. In the view of the Smiths' lawyers, the language was surplusage because Columbia Gas' rights were constrained by original FERC Order anyway. *See id.* 125:11–15. At the October 8, 2015 hearing, Columbia Gas declined to say whether it did or did not agree with that interpretation, exercising its attorney-client privilege, although as noted in paragraph 21, Mr. Bresnahan stated that they had already made that concession. The actual meaning and effect of the "magenta" language, however, is a question for another day (if it is a question for any day) and the Court need not parse it for the purposes of this Motion. What matters now is whether everyone agreed to insert it. They did.

9

3. Additionally, under Pennsylvania law, to enforce a settlement agreement, the moving party must prove that there was a meeting of the parties' minds upon all terms and the subject matter of the agreement. *See Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999).

4. However, "[a] *true and actual* meeting of the minds is not necessary to form a contract." *Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478, 482 (Pa. Super. Ct. 1984) (emphasis added); *see also Ins. Co. of Greater New York v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 459 (W.D. Pa. 2015) (clear contract terms trump "[a]ny contrary, unspoken understanding" held by one party). Rather, it is parties' "outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Walsh*, 486 A.2d at 483; *see also Zandier v. Babcock & Wilcox Const. Co.*, No. 2:13-cv-459, 2015 WL 757480, at *19 (W.D. Pa. Feb. 23, 2015) ("any contractual intent . . . must be discerned from the parties' objective manifestations."). In fact, contracts can be formed even if a party does not fully contemplate that legal consequences will attach to the transaction. *See Walsh*, 486 A.2d at 483.

5. The appropriate standard of review is that of summary judgment, meaning the movant must show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *See Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010); *Martin v. Hoveround Corp.*, No. 10-3970, 2011 WL 742573, at *2 (D.N.J. Feb. 24, 2011) ("Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement.").

6. Settlements entered into by attorneys are presumed to have been authorized by the client. But an attorney does not have authority to settle solely by virtue of her general power to handle the case. *See Garabedian v. Allstates Engineering*, 811 F.2d 802, 803 (3d Cir. 1987).

7. The presumption of authority can be rebutted by factual evidence that the client would have objected to the attorney's conduct. *Lerner Master Fund, LLC v. Paige*, No. 5-11-bk-05957-JJT, at *3 (Bankr. M.D. Pa. 2012).

8. Where parties exchange draft agreements that differ dramatically on their essential terms, the agreement is too ambiguous to be enforceable. *Shell's Disposal & Recycling, Inc.*, 504 F. App'x at 202.

9. Courts will, however, enforce oral settlement agreements even when the parties have failed to execute a written agreement if the parties have agreed on the essential terms. *Krebs v. United Refining Co.*, 893 A.2d 776, 783 (Pa. Super. Ct. 2006).

## III. **DISCUSSION**

This case is settled. Everyone stood up in open Court and said that the case is settled as to money and language. There can hardly be a clearer objective manifestation of their intent to be bound by the agreement. That the Smiths later saw the finalized "magenta" language drafted by Columbia Gas and approved by the Smiths' lawyers and then got cold feet does not change the fact that it is a settled case.

Columbia Gas argues in its Motion to Enforce that there was a deal on January 9, 2015. They say that they know that because the lawyers for the Smiths—Messrs. Stone and Bresnahan—told them so and because the Smiths themselves said so in open Court. Columbia Gas argues that the Smiths' in-court admissions "that they had reached a settlement . . . and were

satisfied with the terms of the settlement" enable (if not require) the Court to enforce the agreement. ECF No. 166, at 3 ¶ 9.

The Smiths argue that their attorneys did not have authority to bind them to the "magenta" settlement agreement language. The Smiths had said that "they would only agree to terms which gave Columbia no greater rights than the FERC Order, and that they wanted any settlement agreement to be an amendment to their prior agreement," ECF No. 215, at 25 ¶ 36, so they say that their understanding was that when their lawyers told them that Columbia Gas had agreed to "their" terms, they were getting *everything* they wanted, in just the way they wanted it. The Smiths thus contend that because that is not the case, *i.e.* Columbia Gas did not agree to consummate the settlement via an amendment to the prior agreement, their lawyers did not have authority to enter into the settlement agreement despite what they (the Smiths and their lawyers) told the Court.

Essentially, what is left of this case is a dispute between the Smiths and their former lawyers—whose performance the Smiths were perfectly happy with when everyone thought the case was settled. The former lawyers testified that the language they added to Columbia Gas' standard documents is both unnecessary and was as the Smiths directed, in that all of the Smiths' material interests are protected by the existence of the FERC Order.[6] But they nonetheless dutifully negotiated the insertion of such language for their clients' peace of mind. When the Smiths saw the language after it had been reduced to writing, it appears that they personally

---

[6] THE COURT: Do you believe what Mr. Stanley and Ms. Schmitt [current counsel for the Smiths] have referred to as the magenta language protected that position of your Smith clients?

MR. BRESNAHAN: Not only did it, it didn't necessarily need to be in there. It was something they were bound by anyway, but it was negotiated terms that Mr. Stone and I had got and Columbia concedes, again, because they already had the right.

Oct. 8, 2015 Hr'g Tr. 125:1–8.

came to a different legal conclusion. But it is not their right to renege on an agreement to settle the underlying dispute with Columbia Gas because they and their former lawyers now perhaps disagree on its legal import or its necessity.[7]

The Smiths now attempt to demonstrate that because they did not get everything they wanted—everything on their "wish list"—and because their lawyers knew they had a "wish list," they did not agree to settle when they said they agreed to settle. That argument, however, is not supported by the undisputed facts. Messrs. Bresnahan and Stone both credibly testified that they explained to the Smiths that Columbia Gas would *never* sign the Smiths' version of any documents. That testimony was not contradicted. So the Smiths necessarily well knew that any agreement was going to be in the form of a new agreement (not an amendment). That the Smiths now adhere to this view, despite their counsels' insistence that it would not happen, and had not happened, is no basis to undo what was a valid settlement.

When the Court recessed the January 9, 2015 proceedings so the parties could engage in settlement negotiations, Messrs. Bresnahan and Stone had full authority to negotiate on the Smiths' behalves. Even accepting as true the Smiths' current version of what followed, after consulting with their lawyers, they declared in open Court that a settlement had been reached on all material terms—money and language. That is plenty of undisputed evidence of a meeting of the minds.

The Smiths now try to say that they would have objected to the form of agreement had they known how it was to be typed up. They argue that their lawyers knew their "wish list," that that "wish list" did not appear in the form they preferred (although their lawyers say they got it in substance) and therefore, they have rebutted the presumption that settlements entered into by

---

[7] The Court notes that the Smiths are not unsophisticated parties. They appear to have experience with right-of-way agreements, evidenced by their insistence on modifying the one they already have.

13

attorneys are presumably authorized. *See Garabedian*, 811 F.2d at 803. But whatever qualms the Smiths had with the deal their lawyers negotiated should have and could have been taken up during the negotiations. Instead, the Smiths ratified their lawyers' conduct in open Court. More centrally, the Smiths' lawyers got them the substantive terms they wanted. The Smiths agreed to the deal, and the presumption has not been rebutted.

Applying the summary judgment standard here, there is simply no genuine issue of material fact as to contract formation or the essential terms. The Smiths' unequivocal verbal assent at the January 9, 2015 hearing removes any dispute about contract formation. The explicit nature of that assent, combined with the undisputed testimony that the document the Smiths now refuse to sign accurately reflects the January 9 negotiations, removes all doubt that there was an agreement on money and on operative language.

A few final notes. Just because the Smiths did not look at any handmade changes during or after the settlement negotiations did not deprive them of their power to enter into an agreement nor does it absolve them of their responsibilities once they have done that.[8] The terms of the agreement here are sufficiently definite to be enforceable and the Smiths (as well as Columbia Gas) manifested their intention to be bound by the essential terms—money and language—at the January 9, 2015 hearing. The Court therefore concludes that an agreement was reached then and there and will grant Columbia Gas' Motion to Enforce. The Pennsylvania

---

[8] At the October 9, 2015 hearing on this point, Mr. Steven D. Smith testified:

THE COURT: Did you ask [Mr. Stone] what he meant by [they had accepted your terms]?

MR. STEVEN D. SMITH: I have to say I did not.

THE COURT: That's fine.

MR. STEVEN D. SMITH: I see now I should have.

Oct. 8, 2015 Hr'g Tr. 150:16–19.

Right-of-Way Agreements and Licenses for Temporary Construction Activity filed at ECF Nos. 216-3 and 216-4 are binding on the parties, as are the Settlement Agreements in the form transmitted by counsel for Columbia Gas to Messrs. Stone and Bresnahan following the January 9, 2015 hearing, and the Smiths are obligated to execute them.[9]

## IV. CONCLUSION

For the foregoing reasons, Columbia Gas' Motion to Enforce Settlement Agreement is GRANTED.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: May 29, 2016
cc: All counsel of record

---

[9] Columbia Gas also moved for fees and costs for bringing the Motion to Enforce. ECF No. 216, at 21. While the Court concludes that the answer to the substantive question of whether there is a settlement here is clear (there is), it cannot say that anyone engaged in bad faith conduct to a degree that would warrant an award of fees. This case has embodied many moving parts, over a long period of time, and prior derailed settlement efforts. Bringing those matters to a head in these proceedings does not in the Court's view fall so far outside the bounds of reasonableness so as to support an award of counsel fees.

15